IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
MOBILE DIVISION

| | |
|---|---|
| **FUELING MARITIME MIDDLE EAST FZCO** f/k/a **GLANDER INTERNATIONAL BUNKERING DMCC**<br><br>    Plaintiff,<br><br>v.<br><br>**M/V CAPELLA (IMO No. 9518165)** with her freight, engines, machinery equipment, fixtures, appurtenances, etc. *in rem*<br><br>    Defendant. | Civil Action No.:<br><br>1:26-CV-00033-JB-M<br><br>IN ADMIRALTY |

## MOTION FOR RELEASE OF VESSEL AND EXPEDITED HEARING PURSUANT TO SUPPLEMENTAL ADMIRALTY RULE E(4)

Comes now Capella Shipholding, Inc. ("Capella"), continuing its restricted appearance pursuant to Supplemental Rule E(8), as Owner of the Defendant M/V CAPELLA (IMO No. 9518165) (the "Vessel") moves this Court for a prompt hearing and to issue an Order releasing the Vessel from arrest pursuant to Supplemental Admiralty Rules E(5)(c) and E(4)(f). In support of this request, Capella states as follows:

### Introduction and Factual Background

Plaintiff Fueling Maritime Middle East FZCO f/k/a Glander International Bunkering DMCC's ("Plaintiff") Complaint stems from an outstanding balance related to the provision of 450.01 MTS of Very Low Sulfur Fuel Oil (the "Bunkers") to the Vessel at the request of the Vessel's Charterer, Victory Shipping Pte. Ltd. (the "Charterer"), on or around April 23, 2025. (Complaint, Doc 1., PageID:2, ¶ 7.)

1

Prior to the provision of Bunkers to the Vessel, the Master issued to the Plaintiff a Pre-Supply Notice and Acknowledgement relating to the prohibition of liens on the Vessel (the "Notice"). A true and accurate copy of the Notice is attached hereto as **Exhibit 1**. The Notice was acknowledged by Plaintiff's representative at the time of receipt. The Notice provides:

> For and on behalf of the Vessel, her Master, her Managers and Owners, please be advised that the acceptance of bunkers, services and/or goods supplied or provided to the Vessel upon the request of the Vessel's charterers, "VICTORY SHIPPING Pte. Ltd." shall not entitle any supplier or provider of such bunkers, services, or goods to seek payment therefor from the Vessel, her Master, or Owners under any circumstances.

(Ex. 1.) Further, the Notice explicitly provides, "No lien shall arise or may be asserted in any jurisdiction whatsoever against the Vessel or any associated vessel or property in connection with such supply or provision. . . ." (*Id.*) In other words, the Notice establishes that the Charterer was solely responsible to the Plaintiff for payment relating to the Bunkers, and the Vessel could not be held liable for the Charterer's nonpayment.

The Master also issued a Letter of Protest (the "LOP"), again reiterating that the Bunkers were "solely FOR THE ACCOUNT OF THE CHARTERER, VICTORY SHIPPING Pte. Ltd., and not for the account of the Ship or her Owners. No lien or other claim against the ship case arise therefrom." A true and accurate copy of the LOP is attached hereto as **Exhibit 2**. The Notice and LOP provided the Plaintiff with actual notice that: (1) the Bunkers were solely for the Charterer's account; and (2) that there was a prohibition of liens being placed on the Vessel related to the Bunkers which were being ordered by the Charterer, not the Owner.

Despite the Plaintiff having received actual notice that there was a prohibition of liens being placed on the Vessel related to the Bunkers, Plaintiff still pursued a maritime lien and moved this Court to arrest the Vessel related to the Bunkers. (*See* Doc. 1.) Relying on Rule C of the Supplemental Rules for Admiralty and Maritime Claims of the Federal Rules of Civil Procedure,

2

Plaintiff had the Vessel wrongfully arrested at the Port of Mobile on February 4, 2026. (*See* Doc. 8.) Plaintiff's wrongful arrest has and continues to cause damage to the Vessel and her Owners.

## Legal Standard

The Court has authority to place a vessel under arrest to enforce any maritime lien. Fed.R.Civ.P. Supp. Adm. R. C(1)(a); Supp. Adm. R. C(3)(a). Following an arrest, a vessel owner may request the Court to vacate the arrest pursuant to Supplemental Admiralty Rule E(4)(f). *James v. M/V EAGLE EXP.*, No. CA 12-423-MJ-C, 2012 WL 3068791, at *3 (S.D. Ala. July 27, 2012). "The purpose of the Rule E(4)(f) hearing is to 'afford due process to a shipowner whose vessel has been arrested . . .'" *Id.* (citation omitted). The plaintiff "must shoulder the burden of showing why the arrest should ***not be vacated***." *Id.* (citations omitted) (emphasis added). In fact, the plaintiff must show "by a preponderance of the evidence that it is entitled to a valid maritime lien" and, in turn, to have the vessel remain arrested. *Id.* When a plaintiff fails to meet this burden, the arrest must be vacated, and the vessel must be released.

## Argument

The arrest of the Vessel in this case is unlawful, because the Plaintiff cannot assert a valid maritime lien against the Vessel, as required under Rule C of the Supplemental Rules for Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

"[A] party who knows of a prohibition of liens clause before supplying goods or services to a vessel cannot later claim a maritime lien for those goods or services." *Stevens Shipping & Terminal Co. v. JAPAN RAINBOW, II MV*, 334 F.3d 439, 443 (5th Cir. 2003) (citing *Gulf Oil Trading Co., a Div. of Gulf Oil Co. v. M/V CARIBE MAR,* 757 F.2d 743, 749 (5th Cir. 1985)). Therefore, a maritime lien can be "defeated" when the vessel establishes that the supplier "had

3

knowledge of a prohibition of lien clause in the charter." *Belcher Oil Co. v. M/V GARDENIA*, 766 F.2d 1508, 1513 (11th Cir. 1985).

Here, the Master provided Plaintiff with two separate documents detailing that the Vessel had a prohibition of liens clause in her charter regarding the Bunkers. Specifically, the Notice explained that no liens could be placed on the Vessel related to the Bunkers. (*See* Ex. 1.) In addition, when Plaintiff's representative signed the Notice "for receipt only," the Master issued the LOP, again emphasizing that the Vessel could in no way be responsible for a maritime lien related to the Bunkers. (*See* Ex. 2.) Thus, the Notice and LOP, which were both explicitly acknowledged by the Plaintiff's representative, proves that the Plaintiff had actual notice of the Vessel's prohibition of liens. *See Stevens Shipping & Terminal Co.*, 334 F.3d at 442 (holding that a fax confirmation alone "created a rebuttable presumption that [the Plaintiff] received the notice").

Applying *Stevens Shipping* and *Belcher Oil Co.*, the Plaintiff cannot maintain a maritime lien against the Vessel, because it had actual notice of the Vessel's prohibition of liens clause. Accordingly, the Plaintiff's maritime lien is "defeated," and the Vessel's arrest should be vacated. *Belcher Oil Co*, 766 F.2d at 1513.

## Conclusion

The Plaintiff wrongfully had the Vessel arrested, despite having actual notice that it could not impose a maritime lien against the Vessel. Accordingly, Capella requests this Court to issue an Order releasing the Vessel and awarding Capella its costs against Plaintiff for the wrongful arrest.

4

        Respectfully submitted,

        /s/ *Jaime W. Betbeze*
        Jaime W. Betbeze (BETBJ5982)
        Maynard Nexsen PC
        Attorney for Defendant,
        M/V CAPELLA (IMO No. 9518165)
        11 North Water Street, Suite 24290
        Mobile, Alabama 36602-5024
        Telephone:    (251) 432-0001
        Facsimile:    (251) 432-0007
        E-mail:  jbetbeze@maynardnexsen.com

5