IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| FUELING MARITIME MIDDLE EAST FZCO, etc., | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) CIV. A. NO.: 26-0033-JB-MU ) |
| M/V CAPELLA (IMO NO. 9518165), etc., | ) ) ) ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

On February 4, 2026, Capella Shipholding, Inc. ("Capella"), appearing pursuant to Supplemental Rule E(8) as the Owner of Defendant M/V CAPELLA (IMO No. 9518165) (the "Vessel"), filed a Motion for Release of Vessel and Expedited Hearing Pursuant to Supplemental Admiralty Rule E(4). (Doc. 12). This motion has been referred to the undersigned Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. Gen. LR 72. In its motion, Capella seeks release of the Vessel from arrest pursuant to Supplemental Admiralty Rules E(5)(c) and E(4)(f). (Doc. 12). Plaintiff filed a brief in opposition to this motion on February 5, 2026 (Doc. 19), and Capella filed an evidentiary submission on February 6, 2026 (Doc. 20), which the Court will consider in this ruling over objection from Plaintiff. After an evidentiary hearing on the motion and for the reasons set forth below, the undersigned Magistrate Judge **RECOMMENDS** that Capella's motion for release of the Vessel be **DENIED.**

### I. Factual and Procedural Background

Plaintiff is a foreign corporation located in Dubai, United Arab Emirates and is in

the business of supplying bunkers and other fuels to vessels. On or about March 21, 2025, non-party Victory Shipping Pte Ltd (VSPL) wrote to Plaintiff to have them supply a vessel with bunkers pursuant to Plaintiff's General Terms and Conditions of Sale. [See Doc. 1-1]. Plaintiff responded with an Order Confirmation the same day.

On or about April 10, 2025, VSPL confirmed the nomination of the M/V CAPELLA and Plaintiff sent a further Order Confirmation. Based on the record before the Court, VSPL was at all relevant times the charterer of the M/V CAPELLA. On or around April 23, 2025, Plaintiff supplied 450.01 MTS of fuel (the "Bunkers") to the M/V CAPELLA at the request of the vessel's then charterer, VSPL, in Richards Bay, South Africa. The Vessel was supplied Bunkers subject to Plaintiff's General Terms and Conditions of Sale, dated February 1, 2024. [See Doc. 1-2].

On April 30, 2025, Plaintiff issued an invoice for bunkers to all, *inter alia*, VSPL and the Vessel in the amount of $262,805.84. [Doc. 1-3]. As a result of VSPL's failure to satisfy the invoice pursuant to the Terms and Conditions of Sale, and pursuant to the Commercial Instruments and Maritime Liens Act, 46 U.S.C. 31301 and Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, Plaintiff initiated this action in the United States District Court for the Southern District of Alabama on or about January 30, 2026, in advance of the Vessel's arrival at the Port of Mobile. [Doc. 1]. The Vessel was then arrested by the United States Marshals Service for the Southern District of Alabama on or about February 4, 2026. [Doc. 8].

The same day, the Vessel Owner, Capella Shipholding, Inc., made a limited appearance pursuant to Supplemental Admiralty Rule E(8) of the Federal Rules of Civil Procedure to file its Statement of Interest [Doc. 11] followed immediately by its Motion for

Release of Vessel and Expedited Hearing Pursuant to Supplemental Admiralty Rule E(4). [Doc. 12]. The Owners' Motion claimed Plaintiff had wrongfully arrested the Vessel because, before the supply of the Bunkers, Owners alleged the Master of the Vessel issued to the Plaintiff a Pre-Supply Notice and Acknowledgment and Letter of Protest which contained specific "no lien" provisions which would operate to invalidate Plaintiff's claims for a valid maritime lien against the Vessel. [Doc. 12, p. 2; Docs. 12-1, 12-2].

On February 5, 2026, Plaintiff filed its Response in Opposition to Owners' Motion [Doc. 19]. Plaintiff's Response was accompanied by the Affidavit of Rizwan Nasir [Doc. 19-1], which established the Plaintiff had received neither the Pre-Supply Notice and Acknowledgment, Letter of Protest, nor any other information or documents which would otherwise indicate the presence of a lien prohibition clause prior to supplying the Vessel with the Bunkers on or about April 23, 2025, or before filing this action.

On February 6, 2026, the Court conducted an expedited hearing on the Owners' Motion pursuant to Supplemental Admiralty Rule E(4) at the Owners' request. At the commencement of the hearing, the parties announced in open Court the agreed stipulation that the Plaintiff's Complaint (and documents in support thereof) established a *prima facie* showing of a valid maritime lien under 46 U.S.C. 31301. Accordingly, the evidence and argument presented during the hearing focused on the Plaintiff's alleged knowledge and/or possession of the Pre-Supply Notice and Acknowledgment, Letter of Protest, or any other information or documents which would otherwise indicate the Plaintiff had actual knowledge of any lien prohibition clause(s) or notices prior to supplying the Vessel with the Bunkers on or about April 23, 2025.

At the hearing, Plaintiff presented witness Rizwan Nasir who testified on Plaintiff's

behalf. Consistent with his Affidavit, Nasir testified he was personally involved with the initiation of the transaction resulting in the supply of the Bunkers to the Vessel, and this process began on or about March 20, 2025, when VSPL contacted Plaintiff asking for a quote for supply of the Bunkers. Plaintiff provided the quote the same day which was ultimately accepted by VSPL. On April 10, 2025, VSPL nominated the Vessel to receive the Bunkers in Richards Bay, South Africa on or about April 23, 2025, which is the date the Bunkers were ultimately supplied.

Nasir testified he did not receive any information or documents from VSPL (or anyone else representing VSPL or the Owner) which would in any way indicate VSPL or the Vessel would require an agreement regarding a no-lien clause or any other lien prohibitions before supplying the Bunkers. Nasir testified in his eight (8) years working within the bunker supply industry, if such a proposition was made by a vessel charterer and/or owner, the Plaintiff's ordinary course of action would be a demand for pre-payment as opposed to supplying bunkers on credit. Moreover, Nasir testified these requests ordinarily come days or weeks in advance of a vessel's arrival in port and/or the supply of the bunkers.

Nasir also testified regarding the various entities involved with the supply chain of the Bunkers from both a contractual standpoint as well as the physical supply of the Bunkers. Specifically, the Plaintiff's sister company, Dan Bunkering (Africa) Ltd ("Dan Bunkering"), subcontracted the sale of the Bunkers to FFS Refiners Pty Ltd ("FFS Refiners"), while FFS Refiners subsequently utilized delivery barge *"Bongani"* to physically deliver the Bunkers and supply the Vessel on April 23, 2025.

Based on the testimony and documents before the Court, it appears the Pre-

Supply Notice and Acknowledgment was presented to and stamped by the Master of the *Bongani* on April 23, 2025, the date the Bunkers were supplied to the Vessel. There is no independent evidence to indicate whether this Notice was provided before, during, or after the physical supply of the Bunkers. Conversely, the Letter of Protest reflects the exact volume of Bunkers provided to the Vessel, indicating it was not provided to and/or stamped by the Master of the *Bongani* until after the Bunkers were supplied. Additional documents reflect the *Bongani* supplied the Bunkers on behalf of FFS Refiners, but no documents or testimony indicate the *Bongani*, its Master, or any other personnel associated with the *Bongani* or FFS Refiners had authority to assent to or accept the Pre-Supply Notice and Acknowledgment or Letter of Protest on the Plaintiff's behalf at any point before or after the supply of the Bunkers.

Of note, based on the record before the Court, it appears the Pre-Supply Notice and Acknowledgment and Letter of Protest were provided to the Master of the *Bongani* on April 23, 2025, the day the Bunkers were supplied. Nasir testified in his eight (8) years working in the bunkers supply industry, he could not recall a single time when documents containing no-lien clauses or other lien prohibition requirements were presented to the Plaintiff (and/or any agent or representative thereof) on the day the bunkers were to be supplied. Accordingly, this was a substantial departure from the ordinary course of business based on Mr. Nasir's experience.

Ultimately, there was no evidence presented to the Court to indicate the Pre-Supply Notice and Acknowledgment, the Letter of Protest, or any other document which would otherwise serve as notice of a lien waiver/prohibition was delivered to the Plaintiff prior to the supply of the Bunkers, nor is there any evidence these documents were

delivered to the Plaintiff prior to the Owners' appearance and filing of their Motion. Indeed, upon direct question of the Court, Owners' counsel conceded there is currently no evidence in the record which shows the Plaintiff received the aforementioned documents or otherwise had actual knowledge of any lien prohibition notice(s) prior to the supply of the Bunkers.

## II. Legal Conclusions

Maritime liens are creatures of federal law and arise automatically when necessaries are provided to a vessel on the order of the owner or a person authorized by the owner. 46 U.S.C. § 31342. The maritime lien is a powerful remedy designed to ensure that those who supply necessaries to vessels are compensated for their services. Because of the significant protections afforded by maritime liens, courts have held that a party seeking to defeat such a lien through an alleged contractual waiver bears a substantial burden.

The Fifth Circuit's decision in *Gulf Oil Trading Co., a Div. of Gulf Oil Co. v. M/V CARIBE MAR*, 757 F.2d 743, 749 (5th Cir. 1985) is instructive on this point. Courts have consistently held that for a contractual provision to effectively waive a maritime lien, the lien claimant must have had *actual knowledge* of the waiver provision before supplying the necessaries. *Id.; see also Belcher Oil Co. v. M/V Gardenia,* 766 F.2d 1508 (11th Cir. 1985); *Gulf Oil Trading Co. v. M/V Freedom*, 1985 WL 4787 (S.D. Tex. 1985)**.** This requirement of actual knowledge ensures that suppliers are not unknowingly stripped of their statutory protections through documents they never saw, reviewed, or agreed to. It is also well established that the receipt of documents by an arm's length agent or

contractor does not automatically impute knowledge to the principal. *M/V CARIBE MAR*, 757 F.2d 750.

The Court finds the Fifth Circuit's ruling in *M/V CARIBE MAR* instructive in this case. In *M/V CARIBE MAR,* a vessel owner seeking to invalidate a maritime lien made similar arguments to the ones the Vessel Owners make here, arguing the barge master of an arms-length bunker barge received papers with a prohibition of lien clause and the barge master's receipt should operate as a waiver of the supplier's lien. *Id.* at 750. As the Fifth Circuit explained:

> The essence of [defendant's] argument is that since the master of the barge was entrusted with delivering the papers containing the technical specifications of the bunkers and with returning the delivery receipt to [supplier], the master was [supplier's] agent for all purposes connected with these papers. Thus, [defendant's] reasoning runs, [supplier] is chargeable with the notice of the prohibition of lien clause given to the master of the barge on the delivery receipt.
>
> The district court correctly rejected this argument. [Defendant] produced nothing to indicate that the master of the barge served as anything more than an intermediary in the delivery of these papers, a role which is not inconsistent with its status as an independent contractor delivering the fuel. [Defendant] also contends that "the master and chief engineer of the vessel did all within their power to place the supplier on notice of the pertinent provisions of the charter party," . . . and no contention is made that [Defendant's] employees brought the prohibition of lien clause to [supplier's] attention. The record fully supports the district court's finding that notice to the barge personnel was not notice to [supplier]. *Id.* at 750-51.

As was the case in *M/V CARIBE MAR*, the record here supports the conclusion, and the Owners concede, there is no evidence Plaintiff received the documents on which the Owners rely to support their Motion to Release the Vessel, let alone that the documents were received prior to Plaintiff's supply of the Bunkers. At best, the Pre-Supply

7

Notice and Acknowledgment was supplied to and stamped by the Master of the supply barge, *Bongani*, but there is no evidence to suggest the Master "served as anything more than an intermediary in the delivery" of the Bunkers.

While Owners liken this case to the Fifth Circuit's opinion in *Stevens Shipping v. Japan Rainbow II,* 334 F.3d 439 (5th Cir. 2003), there are multiple key factual distinctions which make the current case inapposite to *Japan Rainbow*. Specifically, the record in *Japan Rainbow* established the plaintiff lien-holder had indeed received the lien waiver notice as opposed to some third-party or intermediary. *Id.* at 441. Moreover, the notice at issue in that case was delivered to the plaintiff by fax approximately one month before the vessel in question arrived in port and plaintiff provided the services which ultimately led to its lien claims. *Id.* In short, the plaintiff's argument against the lien waiver in *Japan Rainbow* was merely that it did not *review* the lien notice once it was faxed to them and plaintiff challenged the reasonableness of delivery via fax. *Id.* That is not the situation before this Court.

As established above, there is no evidence Plaintiff actually received the notices in question at any point prior to Owners' filing them in the record on February 4, 2026. Moreover, the notices were, allegedly, delivered to a third-party intermediary, not the Plaintiff or anyone with authority to accept the notices (and the terms therein) on Plaintiff's behalf.

Accordingly, the Court recognizes the well-held standard of *actual knowledge* required on the part of the lien holder, and there is no evidence the Plaintiff here had actual knowledge of the Pre-Supply Notice and Acknowledgment, the Letter of Protest,

or any other documents or information which would otherwise support a claim of actual knowledge of the lien prohibition clauses.

### III. Conclusion

For the reasons stated above, the undersigned Magistrate Judge **RECOMMENDS** that the motion for Release of the Vessel filed by Capella be **DENIED**.

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, **by the close of business on February 10, 2026**,[1] file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. Gen. LR 72(c)(1) & (2). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed

---

[1] At the evidentiary hearing, the parties agreed to this abbreviated objection period.

9

determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the **6th** day of **February, 2026**.

s/P. BRADLEY MURRAY
UNITED STATES MAGISTRATE JUDGE
